Our first and only case for the day is Torres v. US Vision et al., No. 25-1626, and we'll hear from the Appellant's Counsel. Good morning, Your Honors. Good morning. May it please the Court, my name is Pierre Bergeron and I represent the plaintiffs. I'd like to reserve three minutes for rebuttal. That will be granted. Your Honors, in this data breach case, the District Court committed two independent errors. First, it declined to recognize a duty under New Jersey negligence law. And second, it dismissed the Arizona Consumer Fraud Act claim for want of an allegation of reliance. The Court should reverse on both grounds, and I'd like to start with New Jersey negligence law. When you're looking at New Jersey, you didn't really get into it in the briefs, but have you looked at the third restatement? I know New Jersey has not adopted, of course, the third restatement yet. I think they only adopted the second restatement, but there's the third restatement, as I'm sure you know, in terms of bystander liability, anyhow, which you could argue applies, and it's analogous. In terms of bystander liability, it expands the ability to bring suit and gets away from a privity requirement. Have you looked at that at all? I can't say that I have, Your Honor, but I do think that what you're saying is generally consistent with what we see in the New Jersey cases. As the Court's aware, there's a two-step analysis for duty under New Jersey law. One is the harm must be foreseeable, and then the second is fairness and policy considerations. So the second is? Fairness and policy considerations. And here, the foreseeability element is conceded by the other side. And, of course, there's good reason for that because data breaches are inevitable. There's pervasive cases on it, and to their credit, they concede that point. And, of course, the procedural posture here, it's pretty low bar, right? It is. Motion to dismiss. It is. It's not 9B. It's not summary judgment. It's not summary judgment. And I think that's an important point because, as you look through their brief, they fight the allegations of the complaint. And they indicate there's facts in there that aren't in the complaint, and we have to take the allegations in the complaint. It's a multi-factor test, though. I'm sorry? It's a multi-factor test. Yes. So once you get past foreseeability, which they've conceded, and foreseeability is kind of the foundational element of duty, then you look at the multi-factor test, which is relationship of the parties, the nature of the risk, the opportunity and ability to exercise care in the public interest. And what the district court did here was it only looked at the relationship issue. It did not consider the balance of those criteria. And that is legal error under New Jersey law because the court is supposed to consider the totality of circumstances and not simply the relationship one. So what do you want us to do here? Do you want us to vacate and send it back and say, do consider this? Or do you want us to consider them in the first instance? I think the court should consider it in the first instance. I mean, this is de novo. It's all presented to you all. And I think that the court should just simply reverse and say that the motion to dismiss should be denied and let the case move forward. The second part, Arizona, maybe moving to that now. I'm really candid with you. It seems to me the first part of Jersey law, it seems to me it's pretty clear, at least in my mind, we haven't discussed the case, that the court got it wrong. As to the Arizona clause of action, if I can call it that, I'm not sure that your complaint is sufficiently specific to come within the ICQAW and COMBI requirements of pleading, even given the 2013 amendments. Maybe you can help me understand why. Let me see if I can persuade you on that, Your Honor. So first of all, this also is not 9b. This is simply plausibility. And the question is, how do we interpret the unfair act or practice language, which was added to the statute in 2013? Before we move on, it's not 9b? It's a fraud act, right? They have not argued that it's 9b. The district court, in the most recent opinion, did not subject it to 9b. And I think that that makes sense, because ultimately what we're saying is the unfair act is not a species of fraud. Fraud is subsumed within that. But getting back to Judge McKee's question, as you look at the elements that this court sketched out in the Wyndham Worldwide case, applying the FTC Act, which is substantial injury that's not reasonably avoidable by consumers and is not outweighed by countervailing considerations, we've got all of those alleged, Your Honors. We have 700,000 individuals were victims of the data breach. In Wyndham, it was about 600,000, so comparable harms there. We do allege that the plaintiffs had no ability to protect themselves against this risk, because we didn't know that the data was transferred to this organization, and that's at page 91 of the appendix. And then we also allege, albeit not precisely within the language of Wyndham, but that the harm is not outweighed, and that's at 113 and 114 of the appendix. So I believe that we allege all of those elements. And the only issue that they're arguing really is reliance, saying that we have to prove reliance or allege reliance for purposes of this claim, which we think is simply inaccurate because it is not a fraud-based claim. Well, can I ask you a question? Can you identify any authority at all from an Arizona court holding that an unfair practice alone is a sufficient basis for a claim under this statute? Because I sure can't find one. Nor can I, Your Honor. But what I would say is, what I would give you is kind of three answers. One is the Arizona courts have said time and again, construe this broadly. This is to benefit consumers. Give it a broad reach. Second, there's the harmonization provision that says courts can look to federal authority guidance under the FTC Act. And then we have the Wyndham Worldwide case, which provides the substantive standard that we say should apply. And the closest thing, Chief Judge, that I can give you is the case that came out that we cited in our reply brief that came out after the initial brief, District Court of Arizona, not Arizona State case, GlaxoSmithKline. And they said that under the ACFA, courts may use the FTC test for unjustified injury to consumers to determine whether an act is unfair. Even if we use it here, you're really talking about an omission. Does that make a difference that you're saying there's an affirmative duty to do something and they did not do it? There's an omission as opposed to an action which was negligent, an action to put someone within the scope of foreseeable harm. I'm not sure, even looking at the 2013 amendment, that it seems inconsistent with the concept of an omission as an unfair practice. Well, but I think if you're thinking... The sign doesn't help you there. And I think that you're looking at it still through the lens of fraud because you can have an omission when you have a duty to speak that then creates liability. And what we're trying to say, consistent with the Wyndham analysis, is that's kind of beside the point. And what Wyndham recognized was there was a claim for deception in that case, but it wasn't before the court. The court was simply looking at the unfair act, and it was unpacking what unfair means. And granted, that's a nebulous concept, and so that's why the court... But it was an unfair act. Unfair act, right. As opposed to some kind of omission, an obligation to do something which they failed to do. Correct, correct. And that's exactly what the court had before it in Wyndham, and it was in the data breach context. So it was a similar allegation that the company declined to... Didn't protect the data. And remember, the data breach there in that case occurred in 2008 or 2009. We're now substantially in the future where it's obviously much more prevalent, and the concerns about data integrity are pretty significant. In fact, we couldn't file our brief with this court without certifying that we had run a virus test to make sure there's no virus in it. So everyone understands how significant these issues are, and I think that's where we're just simply asking the court to apply the test from Wyndham into the Arizona Consumer Fraud Act claim. Could I jump back to New Jersey for a minute? Sure, absolutely. What inference, if any, should we draw from the fact that the New Jersey legislature has not enacted a statute that creates a private cause of action against entities that store customer data? Yeah, I think the important thing is we're not trying... There is a statute that says we want data protected, and it's a public policy that we want to guard against identity theft, and we cited that in the brief. We're not trying to bring a claim under that because there is no private right of action. I think how it's relevant is the public interest aspect of the second prong of the duty analysis, because we're looking at does the public have an interest here, and the statute is probative of the fact that the answer to that is yes. And I would direct your court... I would direct your honors as well to the Coleman case from the New Jersey Supreme Court that kind of synthesized those four criteria that basically to say who created the risk, who could avoid the risk, and do we as society want to minimize that risk? And the answer to those first two questions here is the defendants created and had the opportunity to avoid the risk. But yes, we as society, getting back to your question, we as society want to avoid this risk, and we know that not just from common sense, but also from the statute. So I think that's how it's relevant. Okay, but still there's no private cause of action, though. That's correct. That's correct. Okay. You talked about Coleman. I know about that one. Another one you cite is Olivo from the New Jersey Supreme Court. That arose in the context of premises liability, take-home tort liability. Why should we extend the Olivo decision rationale to a data breach context? I think what we're asking for, how we're raising those cases, and there were several other cases in similar vein there, is to show that there does not need to be a direct relationship between the company and the plaintiff at the end of the day. And all of those cases basically recognize that there doesn't have to be a direct relationship. And the New Jersey courts said, and Snyder, the absence of a contractual or special relationship is not dispositive and entailer that our courts have shown us favor in determining legal responsibility simply based on the relationship. So that's how we're using them, Your Honor. Okay. How do you define foreseeability in the context of the facts of this case? Well, I think the way that we frame foreseeability is, is it foreseeable that a data breach could occur and that people's private information would be misappropriated and used improperly? And that's why they don't contest foreseeability, because we all know that data breaches are a risk. And if you're holding on to sensitive private information, it's foreseeable that that could be used and the individuals could be harmed. Well, just one quick question. You don't care whether or not it goes to foreseeability, goes to duty or requisition. It doesn't really make a difference in terms of where you decide the issue, but you don't really care how that comes out. No, and I think the only issue here is duty. Like, they have not challenged the other aspects of a negligence claim. So all that the court needs to decide is the duty question. And the other issues are typically questions for the jury at the end of the day. Thank you. We'll get you on rebuttal. Thank you. Thank you. We'll hear from your friend. Just give me one second, Your Honor. OK. Yeah, take your time. There's lots of paper. I know. It's all good. Good morning, Your Honors. Good morning. May it please the Court, my name is Rebecca Rakosky, and I'm here on behalf of the defendants, appellees, US Vision and USV Optical. Because why am I wrong? You heard my interaction with your colleague in terms of the... I'm sorry, I can't hear you. You heard my interaction with your colleague in terms of the New Jersey part of this. Why am I wrong in saying that the district court dismissed it on that? Your Honor, I think the problem here, or the issue here, is that what the plaintiffs are asking is basically unfettered. Foreseeability is not the basis completely for finding a duty exists. It's an element of it, certainly. But it is not... But the district court focused on the relationship. Correct. And dismissed based upon the fact that there was no relationship. So forget even foreseeability. Why is that consistent with the line of Jersey cases from the Supreme Court, where one of them, I think it was Taylor, even said the relationship is not controlling? Relationship is a factor, Your Honor, and if you look at New Jersey case law, there certainly is case law that talks about the relationship being a factor. What about the blood bank cases? Correct. But there... You mean the... ACCA, I believe it was. Yes. They look at the relationship, but in that situation, in the blood bank case, and I believe Your Honor is referring to Snyder. Correct. First off, I would point out it's not a data breach case, right? So we're extending data breach law into an area where that case was not intending to go. The second thing is Snyder is dealing with a quasi-regulatory entity. It was... That affirmatively took an industry-wide safety obligation. That's not the case here. U.S. Vision was not taking on any sort of regulatory role. They were temporarily holding data during a transition. So the cases are very different. And unlike Snyder, there was no undertaking by U.S. Vision. There was no reliance by the plaintiffs on U.S. Vision.  That troubles me. Why is reliance? Because we're not talking fraud. So why does reliance matter? Well, reliance matters, Your Honor, because there has to be some sort of guardrails when we're talking about duty. And duty is a threshold issue. It's, you know, every case, you can't owe a duty to every potential plaintiff. Well, why... When you say every potential plaintiff, that depends on how you define plaintiff. And if you look at plaintiff in the circumscribed pause graph context, in terms of foreseeability of harm, then why don't you owe a duty to every foreseeable plaintiff if foreseeability means someone who is in the zone of danger of your product? Well, I think foreseeability is part of the analysis, Your Honor. Everybody, as I believe the exchange with counsel for plaintiff was, everybody is in a zone of foreseeable harm when you're dealing with data. Because we exchange data. Data is moving constantly. And if you look at that in terms of the policy part of the inquiry, it would seem to me that the policy inquiry would suggest that you then need to look at foreseeability in terms of protecting, quote, everybody. Well, Your Honor, I think foreseeability extends in very limited... You know, when you're dealing with foreseeability, it is an element of considering whether or not duty is extended. But to take foreseeability to say everybody is potentially foreseeable, that is creating a universal duty that, frankly... But a universal duty for whom? For any entity that is even temporarily touching, holding, has data. None of the cases... What's wrong with that? What's wrong with that? If there's some entity that temporarily has my driver's license number, my bank account information, my birth date, my passport number, what's wrong with saying, yeah, you've got a duty to protect that data? Well, I think we have to look at it back in the context of this case. When you're talking about... Well, you take it out of the context of this case. You want to take it back? You put everybody into the equation and take it out of the context of this case. Well, I'm putting it back into the context of the case, Your Honor. When you're looking at the context of this case, you're talking about a contractual duty between U.S. Vision and Nationwide. You're not talking... You're putting privity into the equation. That's my problem with looking at... That's what the district court did. They put privity into the analysis. I think... And, Your Honor, I agree that the district court did rely very heavily on the relationship. But I think if you look at New Jersey case law as a whole and when they are extending duty beyond where there is no relationship, they're doing it in very limited context where there is some sort of undertaking. There is some sort of affirmative action on behalf of a party to... Like in Snyder where they were affirmatively undertaking that duty. When you look at People's Express where you have a finite group, a definite group of identifiable plaintiffs, that's when they're extending the duty. But New Jersey case law is very clear. They're not extending duty to everybody that's, you know, in the world. They limit that duty. Relationship is a factor, but it's not the only factor. Why couldn't relationship then be viewed as if you hold someone's personal data, the kind of data that, to use the language I think of Wyndham, could find its way into the dark web? That gives rise to a duty because the possibility of harm, if you don't use reasonable care, whatever that means in a given set of circumstances, is foreseeable. Well, if Your Honor looks at the cases where they are in data breach context where they're applying the duty analysis, they're looking at cases where the party is collecting the data. U.S. Vision didn't collect the data. I agree, but I don't know what difference that makes. I agree with you. The cases so far, they collect the data. They don't just store the data. I'm trying to get at why that makes a difference. It makes a difference, Your Honor, because we had no control over the data that was being put into our system. Nationwide was the entity that was putting it. But you did have control over the system. There was a joint control over the system at the time, Your Honor, and that's what's pled in the complaint. And, frankly, I mean, that does get a little bit beyond the complaint, which I know that Your Honors had mentioned. But we did not have control over the data that was being put into the system. It was nationwide's duty, nationwide's obligation. Help me understand that. When you say you didn't have control over the data put into the system, I mean, you didn't collect it, so therefore you didn't have control over it. Correct. But once it got into your system, you did have control over it, didn't you? We were holding it, Your Honor. Right. But we weren't allowed to access the data. They were a separate entity, and the data was segmented. You seem to want to create some sort of distinction, now that we're to, you're holding it or storing it. Between a short amount of time and a long amount of time, I don't understand what the difference is. If you're holding it, you're holding it, right? I'm really pointing out the context, Your Honor. I'm actually not trying to. Is there a difference? I don't think there's any difference in terms of what the case law says, and the case law makes it very clear that that collection piece, every single case where they extend duty, state or federal, out of New Jersey or in New Jersey, they're looking at that collection element, because that is where the duty is assumed. They're saying by collecting that data. And so there's no duty whatsoever with holding someone else's, storing, maintaining other people's information. There was absolutely a duty between U.S. Vision and Nationwide, but not as between plaintiffs and U.S. Vision. It's just too attenuated, and the case law supports that. When you say attenuated, I just don't understand that. Let's assume someone collects data and instantly transfers it to someone that stores it. In fact, that might be, in the universe that we live in now, that might be the way things usually work. Why shouldn't we be more concerned as a society in terms of allowing some kind of remedy versus breach and ensuring the data be secure? Why shouldn't we be more concerned with the entity that holds it than the entity that maybe for a nanosecond collects it and has possession and control of it, but then a fraction of a second later it's gone and it's down the road and it's in somebody else's control? Your Honor, because even somebody that's holding the data temporarily or for a longer period of time is basically stuck with the decisions, for lack of a better way of putting it, of the data collector. The data collector, if you look at international privacy law, for example, controllers, the people who are controlling the nature, the scope, the type of data that's being collected, have a higher degree of liability than entities that are processing data. You're saying technologically the collector has a greater ability to control access and limit access to the data once it's stored than the people who are actually storing it? They have more control over the nature of the data that it's collecting. So under Your Honor's prior example, like passports and Social Security numbers and things like that, the data collector is determining what data is being collected and then in turn being transferred. If they choose not to collect that, for example, they wouldn't fall under any of these... We wouldn't be here. And we wouldn't be here.  Right. I slept late this morning. I'm sorry? I would have had to do my hair and my makeup. I could have drank my coffee and my coffee. I don't have any hair to do, so I don't sympathize with you. But yes, Your Honor, I think that's really, and when you look at the case law, that's what every single case that's talking about this, the first thing they talk about is that collection because that's really the determining factor. It's the gateway to everything else. Okay. Doesn't what you're saying create a lot of adverse incentives? I mean, if I collect information and I give it to Judge Sirica and then somehow Judge Sirica forgot about it and let it open, not that your client did that, but I mean, I'd go... Judge Sirica would never... He would never do that. He's really highly responsible. But I go, I don't have it. Then he says, well, I don't have privity with you, so I'm not liable. So what's a consumer to do? The liability would, first of all, the consumer in this instance had remedy. They went and they settled nationwide with a co-defendant. Yeah, I do know that. There was a settlement, though. We don't have a judgment right now. That's right, but there was a remedy for them. The remedy would then be between you and your fellow judge. Okay. Not between you and the data subject. All right, okay. Your Honor, I mean, I'm not doing anything here that is, you know, I'm not extending anything. The plaintiffs are asking you to extend and change the way the law is being read because if you look at every single case, and you asked my co-counsel or opposing counsel at the time, like, are there any cases? There are none. And I know that the plaintiffs repeatedly said, defendants or not, you know, have been unable to show a case. That's right. We can't show a case. But you can't either. There's no case where the New Jersey Supreme Court has said that they're going to limit the liability and negligence to the person who collects the data. No, but, Your Honor, they have limited liability in terms of duty, and they have repeatedly said that when you're dealing with duty, it's not just foreseeability. There are more factors to consider. I mean, if we agree with your position, isn't everyone in your position, anybody who stores and maintains a document, PII, PHI going to be insulated basically from plaintiff's actions? No, Your Honor, because it's always going to be a factual analysis and some sort of determination based on the factors that are played in the complaint, whether or not they can meet those threshold elements of duty. Yeah, but if they're not collecting it, and they're not the collector, they're off the hook. They can be as negligent as they want to be. Put a big billboard up, maybe. The question then becomes – Well, I wouldn't say they can be as negligent as they want to be, Your Honor, but there has to be some sort of boundary, because otherwise anybody that touches the data temporarily, long-term, whatever the case may be, would be held liable under that period. Yeah, but that's my question we started out with. What's wrong with that? You're saying it's a rate of horribles. I kind of like the look of that parade. I'm saying if I give you my data, you've got an obligation to protect it. Your Honor, I also think we have to look at the other side of the argument, too, when we're dealing with businesses. Businesses – this is – I'm sure Your Honor is not ignorant of this – that it's expensive for businesses. They're not – U.S. Vision was not in the business of data security. It wasn't – They contract with someone who is. Those companies do very, very well. They do, Your Honor, and a lot of times they're held liable because they are in those situations, and those are the cases where they're extending it, where someone is affirmatively taken on that duty and affirmatively taken on that obligation. They are – that is their job. That is their primary – U.S. Vision makes eyeglasses. You're saying the software company is liable because that's their business and that's the obligation they're taking on. Yes, Your Honor. Is this a matter for a jury to just apportion a fault? Don't juries do that every day in New Jersey? You know, you're 5 percent, you're 10 percent, you're 65 percent, whatever. And we're not at that stage. We're at the threshold. Your Honor, as Judge O'Hearn pointed out, they don't make it through to – I mean, the case has been litigated for about six years now, and we haven't even gotten to an answer. There's a reason, and the reason is because they can't meet that threshold. They can't establish a duty. In order to get to discovery, in order to get to a jury to do that, there must be a duty. That's a legal finding. And in this case, the New Jersey state law and the federal courts who have extended – who have applied duty in data breach cases simply do not go – don't go past where what we have – we have our situation. Should we certify this? I mean, that bill's had another delay, but should we certify the question to the New Jersey Supreme Court? Your Honor, I think that this court is perfectly capable of addressing that. I do think that the New Jersey Supreme Court has been faced with other cases involving duty and has not extended it. Also, as Your Honor pointed out, the legislature hasn't created a private cause of action here. So there are a lot of indicators that they're not going to take it that far. Could you jump over to, in your last minute, Arizona? Your friend on the other side argues about the harmonization provision of the FTC. Correct. Does that get him where he needs to be? No, Your Honor, it doesn't. The FTC is clearly – is a guideline. They are factors that courts should consider. Those factors include the causes of substantial harm, not reasonably avoidable, and not outweighed. However, as you look at quinality – and I think I'm pronouncing that right, if I've been struggling with that all week, which is a 2004 case out of the District of Arizona – a 2024 case out of the District of Arizona. It dealt closer to the facts in this case, and they did not extend a liability. Post-2013, looking at a third-party processor of data, and they said, no, it doesn't – you're not going to get there. That's a U.S. District Court case? It is, Your Honor. So that's not binding on us in any way? No, Your Honor, but certainly instructive. Okay. Okay, thank you, counsel. Thank you, Your Honor. We'll hear rebuttal. Your Honors, I think the point that you were circling around with my colleague on the other side is very significant, and that is, in this day and age, data is an important and a valuable commodity, and just because a company doesn't happen to collect it in the first instance does not insulate them from liability, because companies alienate data all of the time, and consumers have no way to know whether that's happening, and that's why you don't need to certify this to the New Jersey Supreme Court because all we're asking for is an application of standard New Jersey duty law. It's just applying it in a different factual setting, so it's nothing groundbreaking. It's simply applying that standard that Coleman articulated to this specific factual scenario. And, Your Honor, the one thing I would say on the temporary point is we allege in the complaint that they received this data at least as of 2019 when Nationwide was spun off, and the data breach did not happen until 2021, so they had the data for at least two years. I don't know how that's temporary under anyone's definition. What if it was temporary? Help me with that one. Why would it matter? Well, that was my other point. It doesn't matter, because as long as you're holding the data, you have an obligation to exercise reasonable care to avoid letting someone get unauthorized access to that data, and there's no case law that I've seen or that the defendants have cited that shows some distinction between, oh, if you're a temporary custodian, you only have this level of care, but if you're a longer term, you have this level. Maybe it's analogous to a bailee, although your friend is going to argue, well, with a bailee, that's different because there's a relationship between the owner of the property and the ultimate defendant. If I drive my car into a parking lot, and then I realize, oh, that appointment I'm rushing to is tomorrow, and I pull out in five minutes, and because of the negligent construction of the parking lot, I injure the car, the fact that the bailee only had possession of the car for five minutes doesn't really matter, but I know your friend is going to very easily distinguish that situation. Yeah, and I think what I would say on that is, like, you could say maybe we didn't, maybe we're holding the data for five minutes, and so our reasonable care there, we don't breach that duty, but that would be the other elements of negligence. It would not be the duty element. You'd still have a duty to exercise reasonable care, but whether you breach that duty might be different in that kind of temporary situation. But I would quickly point, Your Honor, to the two cases we cited on page 19 of our brief, the zeroed-in and the net gain. Both district court opinions, but they were finding a duty in this kind of scenario with a third-party data process. Anything else? Okay, thank you, counsel. Thank you, Your Honor. We thank both counsel for your excellent arguments today and your excellent brief.